**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------ x

STEVEN VAN SOEREN,

                Plaintiff,

-against-

                Defendant.

DISNEY STREAMING SERVICE d/b/a
BAMTECH, LLC
------------------------------------------------------------------------ X

Civil Action No.

**COMPLAINT**

**Jury Trial Demanded**

Plaintiff, Steven Van Soeren (hereinafter "Plaintiff"), by his attorneys, Caitlin Robin & Associates, PLLC, as and for his Complaint against Disney Streaming Services d/b/a BAMTech, LLC, (hereinafter "Defendant" or the "Company") herein, alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e; the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k).

2. This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

**PARTIES**

4. Plaintiff, Steven Van Soeren, is a former employee of Disney Streaming Service (d/b/a BAMtech, LLC), located at Chelsea Market, 75 9th Avenue, New York, New York 10011, from August 2016 until his termination on May 6, 2019.

5. Plaintiff resides at 108 Central Avenue, Apt 3C, Brooklyn, New York 11206.

6. Defendant Disney Streaming Service (d/b/a BAMtech, LLC) is a foreign limited liability company organized under the laws of Delaware and holds its principal place of business at Chelsea Market, 75 9th Avenue, New York, New York 10011. At all relevant times, Defendant was an employer within the meaning of all relevant statutes.

## ADMINISTRATIVE PROCEDURES

7. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 15, 2019, within 300 days after the occurrence of the alleged discriminatory practices.

8. On or about July 17, 2019, the EEOC issued a Right to Sue letter to the Plaintiff, which Plaintiff received on or about August 5, 2019.

9. This action was commenced within 90 days of receipt of the Right to Sue letter.

10. Following commencement of this action, a copy of this Complaint will promptly be served both on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

11. Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

12. From August 2016 until May 6, 2019, Plaintiff worked at Disney Streaming Service as a product designer, where his skills were utilized for both design centered projects as well as director-oriented tasks.

13. During the three years Plaintiff was employed by Defendant, he was a passionate and dedicated employee who diligently completed his work.

14. Throughout his employment, Plaintiff consistently received positive, raving, reviews relating to his performance.

15. Plaintiff never received a written or verbal warning, nor did the Company ever take disciplinary action against him. As a matter of fact, Plaintiff exceeded the performance goals set forth by his supervisors Brian McConnell, Jerrell Jimerson and Ole Lutjens.

16. During the course of his employment, Plaintiff was subject to a work environment displaying a pattern and practice of discrimination and evidence of discriminatory animus. In particular, Plaintiff was treated differently from all other employees at the Company because of his familial status v*is a vis* his spouse's pregnancy.

17. At the onset of Plaintiff's employment, he was asked to accept lower pay, despite the position being listed for a much higher salary. Furthermore, soon after Plaintiff's employment commenced. Plaintiff was subject to public shaming and harassment predominantly perpetrated by his supervisor, Mr. McConnell, and a co-worker, Connor Paglia.

18. On or about June 2018, Plaintiff's privacy was violated by numerous Company personnel in violation of New York Penal Law Section 250.05. Specifically, several upper level employees discussed and referenced matters that Plaintiff had only discussed at home with his spouse, and/or viewed through his Google Chrome internet browser, leading to the legal conclusion that he was hacked by the Company's personnel.

19. By way of example, Plaintiff was expecting a child but had not disclosed that information to anyone at the Company. Yet, Mr. McConnell, in an unrelated conversation, blurted out to Plaintiff, "maybe you shouldn't have a kid." Likewise, Mr. Paglia sent Plaintiff an unsolicited video of children developing in utero.

20. The same sentiments were harbored by Jennifer Kaufmann, Associate Director of UX & Design, who asked if Plaintiff had a good reason for having a child. Mr. McConnell also stated, within hearing distance of Plaintiff, "I don't know why he [Plaintiff] decided to have a kid. At 30 my wife and I thought about it but decided that we'd wait until 40." This was direct evidence of the discriminatory animus and ill-sentiment harbored towards Plaintiff by Mr. McConnell.

21. In another instance, Plaintiff, while at home researched the benefits of a massage. Shortly after, Mr. Connell asked him if he was feeling oily after his message. Plaintiff never discussed getting a massage with anyone at the Company, yet multiple people referenced him getting a massage.

22. For example, Ms. Kaufmann said on multiple occasions, that "you should give your spouse massages." Jesse Friedland, Director of Media Engineering also made a comment to Plaintiff about the massage, saying "let's get you all greased up."

23. In another instance, Plaintiff researched the health concerns and reported carcinogens in Subway, the fast food restaurant chain, if any, on his phone in advance of getting lunch. Shortly after, like clockwork, Mr. Paglia told Plaintiff that "if you're worried about carcinogens then you shouldn't eat at Subway". John Cabral, an Associate Director of UX & Design then sent Plaintiff a PDF article relating to carcinogens.

24. As a direct and proximate result of Defendants' unlawful conduct as alleged hereinabove, Plaintiff has suffered severe emotional distress, humiliation, embarrassment, mental and

emotional distress and anxiety, and economic harm, all in amount exceeding the jurisdictional minimum of the Supreme Court of the State of New York, according to proof at trial.

25. The devices used to access the foregoing information belonged to Plaintiff, not the Company. The laptop Plaintiff used at home was a P.C., whereas Plaintiff used an iMac at work, which he could neither access from home nor bring home.

26. Based on the foregoing, the Company illegally hacked Plaintiff's phone and personal laptop to obtain information which was then used to harass Plaintiff in violation of New York Penal Law Section 250.25.

27. In addition to the spying, McConnell and Paglia both continued to harass, taunt and intimidate Plaintiff throughout his spouse's pregnancy and the birth of his child. Mr. Paglia, on one particularly troubling occasion, sprayed baby powder all over Plaintiff, because he was having a baby.

28. In a particularly egregious instance, McConnell and Paglia mentioned to Plaintiff at a work party that he believed the party was for Plaintiff's baby because he wanted the baby to be delivered three (3) months early, brandishing a smirk on his face as he said so. Plaintiff was particularly aggrieved and stressed by this harassment, as he was dealing with the stress of pregnancy, and worrying about the possibility of complications. Despite knowing Plaintiff's stress and the fact that babies are not viable before three months, Paglia and McConnell still taunted and traumatized Plaintiff with these possibilities in a discriminatory manner.

29. Other employees of the Company were also subject to such discriminatory treatment. By way of example, a week before Plaintiff's employment was terminated, Plaintiff observed Mr. Lutjens ask Yves Agbre "How's your kid doing, is it everything you ever wanted?" Mr. Lutjens then and said "yuck" and left.

30. Thus, the Company had a pattern and practice of discriminatory treatment of its employees with regard to pregnancy and the birth of a child while employed at the Company.

31. On many occasions, Mr. McConnell used antagonizing words and expletives when speaking with Plaintiff, including "fuck you, Steve," calling him the "tallest midget" and saying that "everything he said was stupid," called him a "creep," and made insulting animalistic faces at him.

32. Plaintiff, in compliance with the Company's dispute resolution practices, reported all of the above-discussed discriminatory interactions and more to the Company's Human Resources Department ("HR").

33. Plaintiff spoke with Counter Laster, an HR representative, who initially seemed concerned and willing to help, but later became distant, disinterested and failed to resolve any of the issues. When questioned by Plaintiff about the status of any investigation into his allegations, HR simply responded that they conducted an investigation but never disclosed the findings of any such investigation to Plaintiff or discussed the outcome with him.

34. As a matter of fact, HR, contrary to their obligation to be a neutral objective party in dispute resolution, divulged confidential information shared by Plaintiff to Mr. McConnell. HR failed in their responsibility to Plaintiff to be confidential, and instead, by their actions (and inactions) encouraged the further attack and berating of Plaintiff.

35. Plaintiff kept reporting the discriminatory treatment as well as the harassing behavior to HR in the hopes of an end to the harassment. However, HR never scheduled a meeting with the relevant parties to discuss the allegations. As a matter of fact, in response to Plaintiff request for investigation and meeting, the HR representative told Plaintiff that he didn't have to remain employed by the Company if he didn't want to, and that he Plaintiff, could always resign.

36. Moreover, HR, in essence, rewarded one of the main harassers, Mr. Paglia by promoting him after Plaintiff reported him for discrimination and harassment.

37. As a result of Plaintiff reporting the incidents to HR, Mr. McConnell threatened to fire Plaintiff, in direct violation of federal, state and local anti-retaliatory laws.

38. Mr. McConnell also refused to correct inaccurate representations made in Plaintiff's year-end review until Plaintiff retracted his prior complaints to HR regarding Mr. McConnell's conduct.

39. Such behavior was not only morally reprehensible, but also in violation of numerous laws and ethical principles, and Plaintiff eventually reported Mr. McConnell's behavior to Mr. Jimerson, who, like everyone else at the Company, did nothing to address it.

40. The Company ratified the actions of its harassing employees by refusing to take any action towards them in response to Plaintiff's complaints.

41. The Company's inaction sent a clear message to Mr. McConnell that he could continue unlawfully discriminating against and harassing Plaintiff without consequence, and further empowered Mr. McConnell to go as far as physically brandishing a knife in a threatening manner in front of Plaintiff on two (2) separate instances.

42. In one of the instances, Mr. McConnell came close to Plaintiff and told him to "watch out", with a knife close to his face, with Mr. Paglia observing the interaction and laughing in jest. Mr. McConnell also periodically swung a baseball bat directly over Plaintiff's head, smirking and insinuating that someday he'll hit him with it.

43. Following the birth of his child, Plaintiff took paternity leave for two (2) weeks in spring 2019 and returned to an unchanged work environment. Specifically, Mr. Paglia had begun taunting Plaintiff upon his return, and Plaintiff, flowing with a sense of protection and paternal

duty as a father, spoke up against Mr. Paglia and asked him to stop harassing him. Specifically, Mr. Paglia made a comment about still birth/children not properly being developed in the womb, and Plaintiff asked him to stop making such references.

44. Despite having knowledge of McConnell's behavior, Mr. Lutjens, McConnell's supervisor, condoned his behavior and unethical practices, while terminating Plaintiff without cause or severance.

45. Specifically, Defendant did not have a legitimate, non-discriminatory reason for the termination of his employment.

46. The aforementioned conduct by Defendants was willful, wanton and malicious, done with reckless and conscious disregard of Plaintiff's rights. Defendant also acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury, pain, suffering, injuries and damages and humiliation to the Plaintiff.

47. Plaintiff further believes that Defendants intended to cause fear, physical injury and/or pain and suffering to Plaintiff. By virtue of the foregoing, the Plaintiff is entitled to recover compensatory, punitive and all other damages.

## FIRST CAUSE OF ACTION
**(Discrimination in violation of Title VII of the Civil Rights Act of 1964)**
**42 U.S.C. 2000(e)**

48. Plaintiff repeats, reiterates, re-alleges each and every allegation in all the preceding paragraphs as if fully set forth herein.

49. Defendant engaged in unlawful employment practices with regard to Plaintiff by virtue of his familial status *vis a vis* his spouse being pregnant and Defendant's employee's knowledge of same.

50. Title VII prohibits employers from treating employees differently based on their family status or their intention to have children, yet Plaintiff was subject to disparate treatment by Defendant based on his familial status and intention to have children.

51. Further, while Plaintiff was treated differently by Defendant by virtue of the pregnancy of his spouse, other female employees of Defendant were not treated poorly or differently by virtue of their pregnancy, or the pregnancy of their partner.

52. As such, Plaintiff was also discriminated against, and subject to disparate treatment by virtue of his sex, in violation of the Pregnancy Discrimination Act.

53. Such unlawful employment practices by Defendant deprived plaintiff of employment opportunities and or/adversely affected his status as an employee.

54. That by reason of the foregoing, said plaintiff demands judgment against the defendants in an amount that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## SECOND CAUSE OF ACTION
**(Discrimination in violation of Pregnancy Discrimination Act of 1978)**
**42 U.S.C. 2000(e)(k)**

55. Plaintiff repeats, reiterates, re-alleges each and every allegation in all the preceding paragraphs as if fully set forth herein.

56. Defendant engaged in unlawful employment practices with regard to Plaintiff by virtue of his familial status *vis a vis* his spouse being pregnant and Defendant's employee's knowledge of same.

57. The Pregnancy Discrimination Act of Title VII prohibits employers from treating employees differently based on their family status or their intention to have children, yet

9

Plaintiff was subject to disparate treatment by Defendant based on his familial status and intention to have children.

58. Further, while Plaintiff was treated differently by Defendant by virtue of the pregnancy of his spouse, other female employees of Defendant were not treated poorly or differently by virtue of their pregnancy, or the pregnancy of their partner.

59. As such, Plaintiff was also discriminated against, and subject to disparate treatment by virtue of his sex, in violation of the Pregnancy Discrimination Act.

60. Such unlawful employment practices by Defendant deprived plaintiff of employment opportunities and or/adversely affected his status as an employee.

61. That by reason of the foregoing, said plaintiff demands judgment against the defendants in an amount that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

### THIRD CAUSE OF ACTION
### (Discrimination in Violation of the FMLA)

62. Plaintiff repeats, reiterates, re-alleges each and every allegation in all the preceding paragraphs as if fully set forth herein.

63. At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the Family Medical Leave Act, 29 U.S.C. § 2601 ("FMLA").

64. By the actions described above, among others, Defendant violated the FMLA by unlawfully interfering with, restraining, or denying the exercise of Plaintiff's rights by, *inter alia*, abusing and discriminating against Plaintiff as mentioned in the foregoing factual allegations.

65. As a direct and proximate result of Defendant's unlawful conduct in violation of the FMLA, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

## FOURTH CAUSE OF ACTION
### (Discrimination in Violation of the NYSHRL)

66. Plaintiff repeats, reiterates, re-alleges each and every allegation in all the preceding paragraphs as if fully set forth herein.

67. By the actions described in the foregoing allegations described above, among others, Defendants discriminated against Plaintiff on the basis of his spouse's pregnancy in violation of the New York State Human Rights Law, Article 15, § 290, *et seq.*, ("NYSHRL") by treating Plaintiff differently from and less favorably than similarly situated employees who were not expecting parents, as well as other similar situated employees of the opposite sex who were expecting parents, thus the alleged discrimination includes discrimination of plaintiff by virtue of his sex.

68. Defendants terminated Plaintiff soon after he returned from paternity leave.

69. Defendants did not give Plaintiff any notice or cause for his termination.

70. Defendants did not give Plaintiff a severance package.

71. As a direct and proximate result of Defendants' unlawful conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

## FIFTH CAUSE OF ACTION
### (Discrimination in Violation of the NYCHRL)

72. Plaintiff repeats, reiterates, re-alleges each and every allegation in all the preceding paragraphs as if fully set forth herein.

73. By the actions described in the foregoing allegations described above, among others, Defendants discriminated against Plaintiff on the basis of his spouse's pregnancy in violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York, § 8-107, *et seq.*, ("NYCHRL") by treating Plaintiff differently from and less favorably than similarly situated employees who were not expecting parents, as well as other similar situated employees of the opposite sex who were expecting parents, thus the alleged discrimination includes discrimination of plaintiff by virtue of his sex.

74. Defendants terminated Plaintiff soon after he returned from paternity leave.

75. Defendants did not give Plaintiff any notice or cause for his termination.

76. As a direct and proximate result of Defendants' unlawful conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

## SIXTH CAUSE OF ACTION
### (Vicarious Liability)

77. Plaintiff repeats, reiterates, re-alleges each and every allegation in all the preceding paragraphs as if fully set forth herein.

78. At all times during the foregoing factual allegations, Defendant controlled the method and manner of their employees' work.

79. Defendant had actual and imputed knowledge of the harms its employees committed against Plaintiff.

80. Defendant did nothing to rectify the damage done by its employees upon Plaintiff.

81. Defendant knew or should have known of the harmful actions their employees conducted against Plaintiff.

82. As a direct and proximate result of Defendant's employees unlawful acts towards Plaintiff, Defendant is vicariously liable for all damages Plaintiff has suffered and continues to suffer, for which he is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

## SEVENTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

83. Plaintiff repeats, reiterates, re-alleges each and every allegation in all the preceding paragraphs as if fully set forth herein.

84. Defendant's actions against Plaintiff constituted extreme and outrageous conduct.

85. Defendant's actions were deliberate and were intended to and directed at causing emotional harm and distress to Plaintiff.

86. Defendant's actions, through its employees, agents and/or servants and supervisors, showed a willful, deliberate and intentional act to harm Plaintiff.

87. Defendants had knowledge that, to a substantial certainty, the emotional distress to Plaintiff would ensue.

88. Defendants' conduct described herein showed a willful intent to harm Plaintiff.

89. As a result of Defendant's actions, Plaintiff has suffered substantial damages, including but not limited to physical harm, medical bills, emotional distress, humiliation and embarrassment, in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Negligent Supervision of Unfit Employees)

90. Plaintiff repeats, reiterates, re-alleges each and every allegation in all the preceding paragraphs as if fully set forth herein.

91. Defendant owed a duty to provide Plaintiff with a safe workplace, free of discrimination, harassment and physical harm.

92. Defendant had both actual and imputed knowledge of the discriminatory acts, harassment and threats of physical violence lodged towards Plaintiff by its employees, and the undue risk of harm which Plaintiff was exposed based upon the reported physical threats Plaintiff was receiving.

93. Defendant was made aware of the physical threats being made against Plaintiff.

94. Defendant knew or should have known of the Defendant's violent propensities of its employees in light of the fact that the same was reported to Defendant on numerous occasions.

95. Despite the foregoing, Defendant failed to take adequate steps to determine the fitness of its employees who were engaged in discriminatory acts, harassment and threats of physical violence lodged against Plaintiff.

96. As a result of Defendant's failure to supervise and/or failure to take corrective action against its employees, Plaintiff was severely emotionally injured.

97. The conduct which was reported to Defendant was the conduct which was reported to Defendant was the conduct which led to/caused Plaintiff's emotional injuries, and Defendant failed to supervise its employees and ensure that the conduct did not occur and escalate was the proximate cause of Plaintiff's injuries.

98. The actions of Defendant were wanton, reckless, with malice and without reason or basis and was arbitrary, capricious and unfounded.

99. As a direct and proximate result of Defendant's employees unlawful acts towards Plaintiff, Defendant is vicariously liable for all damages Plaintiff has suffered and continues to suffer, for which he is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court grant the following relief against Defendants:

i. A judgement against the named Defendants;

ii. An award of compensatory damages;

iii. Damages for emotional distress;

iv. Punitive/exemplary damages;

v. Attorneys' fees;

vi. Pre and post-judgement interest in an amount, in excess of the jurisdictional limits of any other court, in an amount to be determined at trial by the jury; and,

vii. Further relief as this Court deems, just equitable and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all the issues of fact and damages stated herein

Date: New York, New York
November 1, 2019

Respectfully submitted,

**Caitlin Robin & Associates, PLLC**

By: ____/S Annette Aletor____
Annette Aletor, Esq. (AA1121)
Attorneys for Plaintiff
30 Broad St., Suite 702
New York, New York 10004

(646) 524-6026