```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
STEVEN VAN SOEREN,

                          Plaintiff,

         - against -                          MEMORANDUM AND ORDER

DISNEY STREAMING SERVICE D/B/A/ BAMTECH,        19 Civ. 10196 (NRB)

                          Defendant.
----------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff, a male product designer, is a former at-will employee of Disney Streaming Service ("DSS") who brings claims against DSS for pregnancy discrimination based on his wife's pregnancy. Specifically, plaintiff brings claims under Title VII, 42 U.S.C. § 2000e-2(a)(1), as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k); the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296; the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code, § 8-107(22); and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601. Plaintiff also brings claims under New York state tort law for intentional infliction of emotional distress and negligent supervision of unfit employees. Defendant DSS moves under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss each of plaintiff's claims.

I. **<u>Background</u>**[1]

Plaintiff worked at DSS from August 2016 until May 2019. Plaintiff alleges that, during this time, various supervisors and co-workers "sham[ed]," "harass[ed]," and "treated [him] differently from all other employees at the Company" as a result of his "familial status *vis a vis* his spouse's pregnancy." Complaint ("Compl.") ¶¶ 16-17.

Plaintiff sets forth a range of examples of this "pattern and practice of discrimination," Compl. ¶ 16, which began prior to his wife's pregnancy. For example, plaintiff alleges that from the outset of his employment in August 2016, he was asked to accept lower pay than was listed alongside the position listing. Compl. ¶ 17. He also alleges that one of his supervisors, Brian McConnell, used "antagonizing words and expletives," including calling him the "tallest midget" and a "creep," and made "insulting animalistic faces at him." Compl. ¶ 31. Plaintiff further alleges that in June 2018, various co-workers referenced matters that plaintiff discussed only at home or viewed through his at-home internet browser — including oily massages and carcinogens in Subway sandwiches — leading plaintiff to believe that these

---

[1] The following facts, which are drawn from the operative complaint, are accepted as true for purposes of the Court's ruling on defendant's motion to dismiss. The Court draws all reasonable inferences in plaintiff's favor. <u>See</u> <u>Koch v. Christie's Int'l PLC</u>, 699 F.3d 141, 145 (2d Cir. 2012).

employees hacked into his private computer. Compl. ¶¶ 18, 22-23, 25.[2]

Plaintiff also alleges that his co-workers made numerous comments about his future child. For example, before plaintiff had disclosed his wife's pregnancy to anybody at DSS, Mr. McConnell said to plaintiff that he "shouldn't have a kid," and in another instance stated, within hearing distance of plaintiff, "I don't know why he [plaintiff] decided to have a kid." Compl. ¶¶ 19-20. Another employee, Jennifer Kaufmann, asked plaintiff whether he had a good reason for having a child. Compl. ¶ 20. In one instance, presumably once plaintiff told his co-workers that his wife was pregnant (though the complaint is not clear on the timeline) another co-worker, Connor Paglia, sprayed baby powder on plaintiff. Compl. ¶ 27. Another time, Mr. Paglia, who was attending a work party with Mr. McConnell, allegedly said to plaintiff that "he believed the party was for [p]laintiff's baby because he wanted the baby to be delivered three (3) months early." Compl. ¶ 28. Plaintiff, in response, was very "aggrieved and stressed by this harassment, as he was dealing with the stress of pregnancy." Id.

---

[2] Though plaintiff alleges that defendant's personnel hacked his computer in violation of New York Penal Law Section 250.05, notably he does not bring a claim pursuant to this statute or any other claim for violation of privacy. Compl. ¶ 18.

At some point — plaintiff does not indicate when — plaintiff reported each of the aforementioned examples of harassment to DSS's Human Resources department. Compl. ¶ 32. Human Resources, however, ultimately appeared "distant" and "disinterested" in plaintiff's issues and did not disclose the findings of their investigation to plaintiff. Compl. ¶ 33. Nor did Human Resources schedule a meeting to discuss the allegations. Instead, Human Resources informed plaintiff that he could choose to resign. Compl. ¶ 35. Further, Human Resources "divulged confidential information shared by [p]laintiff" with Mr. McConnell. Compl. ¶ 34.

In turn, according to plaintiff, Mr. McConnell threatened to fire plaintiff, and refused to correct incorrect representations made in plaintiff's annual review until plaintiff retracted his complaints to Human Resources. Compl. ¶¶ 37-38. Mr. McConnell also "brandish[ed] a knife in a threatening manner" in front of plaintiff on two occasions, and in other instances "swung a baseball bat directly over [p]laintiff's head." Compl. ¶¶ 41-42.

After plaintiff's child was born, in spring 2019, plaintiff took paternity leave for two weeks. Compl. ¶ 43. Upon his return, Mr. Paglia made a comment to plaintiff about still birth and improperly developed fetuses. Compl. ¶ 43.

4

According to plaintiff, other employees at the company were subject to discriminatory treatment. Plaintiff provides one specific example, wherein his supervisor Ole Lutjens asked another employee, Yves Agbre, "How's your kid doing, is it everything you ever wanted?", and then said "yuck." Compl. ¶ 29. Elsewhere, plaintiff recites the generic refrain that "while [p]laintiff was treated differently by [d]efendant by virtue of the pregnancy of his spouse, other female employees of [d]efendant were not treated poorly or differently by virtue of their pregnancy, or the pregnancy of their partner." Compl. ¶¶ 51, 58; see also Compl. ¶¶ 67, 73. Plaintiff, however, does not provide any examples of disparate treatment between expecting mothers and expecting fathers.

On about May 6, 2019, plaintiff's supervisor, Mr. Lutjens (who is also Mr. McConnell's supervisor), terminated plaintiff without cause or severance. Compl. ¶¶ 12, 44. The precise timing between plaintiff's return to work from his paternity leave and his termination is not clear from the complaint.

## II. Legal Standard

To withstand a Rule 12(b)(6) motion, the non-movant's pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.

5

Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [pleaded] fact[s] . . . allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While the Court accepts the truth of the pleaded facts, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

**III. Discussion**

   **A. Title VII Pregnancy Discrimination Claim**

Plaintiff brings pregnancy discrimination claims under Title VII, the NYSHRL, and the NYCHRL. Turning first to plaintiff's Title VII claim, the Court finds that plaintiff has failed to state a claim. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), sets forth the burden-shifting analysis applied to discrimination claims under Title VII. Under this standard, a plaintiff can establish a prima facie case of discrimination when he shows that: "(1) he was a member of a protected class; (2) he was competent to perform the job in question, or was performing the job duties satisfactorily; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of discrimination." Spiegel v. Schulmann, 604 F.3d 72,

80 (2d Cir. 2010).  With respect to the fourth pleading requirement, a plaintiff can demonstrate circumstances that give rise to an inference of discrimination in a number of ways, including through "the employer's criticism of the plaintiff's performance in . . . degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." Littlejohn v. N.Y., 795 F.3d 297, 312 (2d. Cir. 2015).

Plaintiff's Title VII claim cannot survive the first step of the McDonnell Douglas standard because familial status — such as being a new parent — is not a protected class under Title VII. Under Title VII, it is unlawful for an employer "to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  The PDA amended Title VII to clarify that the terms "because of sex" or "on the basis of sex" include, but are not limited to, "because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to

7

work[.]"  42 U.S.C. § 2000e(k).  Thus, whereas Title VII protects a pregnant employee, it does not protect an employee whose spouse is pregnant.  See Adler v. South Orangetown Central School Dist., No. 05 Civ. 4835, 2008 WL 190585, at *10 (S.D.N.Y. Jan. 17, 2008) (Title VII does not cover claims "predicated on the Plaintiffs' status as new parents"); DeFranco v. Ametek Ameron, LLC, No. 12 Civ. 670, 2013 WL 992287, at *4 (E.D.N.Y. Mar. 13, 2013)(discrimination based on familial status alone is an insufficient basis for Title VII claim).  Because plaintiff is not a member of a protected class, his Title VII claim must be dismissed for failure to state a claim.

Tellingly, plaintiff does not argue in any overt manner that his Title VII claim falls under the narrow "sex plus" exception to the above limitation.[3]  "[S]ex considered in conjunction with a second characteristic—'sex plus'—can delineate a 'protected group' and can therefore serve as the basis for a Title VII suit." Fisher v. Vassar Coll., 70 F.3d 1420, 1433 (2d Cir. 1995), abrogated on other grounds by Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).  But to the extent that plaintiff intends to argue that defendant

---

[3] In support of his Title VII claim, plaintiff relies primarily on a case from the Northern District of Mississippi, Pennington v. Southern Motion, Inc., No. 16 Civ. 110, 2017 WL 3897166 (N.D. Miss. Sept. 6, 2017).  Even if this case is to be construed as invoking a sex plus discrimination argument, for reasons explained below, this fails because plaintiff makes no specific allegations about how any expecting female was treated differently than he was.

8

discriminated on the basis of his male gender plus his wife's pregnancy via his generic allegations about disparately treated pregnant females, see Compl. ¶¶ 51, 58, such allegations are insufficient. Plaintiff's bald allegations regarding disparately treated females are "entirely devoid of any details regarding the purported comparators, e.g., who they are, what their positions or responsibilities were at the company, how their conduct compared to plaintiff['s] or how they were treated differently by defendants." Blige v. City Univ. of N.Y., No. 15 Civ. 8873, 2017 WL 498580, at *9 (S.D.N.Y. Jan. 19, 2017) (alterations in original). In such circumstances, courts in this Circuit regularly grant motions to dismiss. Id.; see also Hernandez v. Premium Merch. Funding One, LLC, No. 19 Civ. 1727, 2020 WL 3962108, at *9 (S.D.N.Y. July 13, 2020)(dismissing Title VII discrimination claim predicated on disparate treatment where "factual allegations are sparse"); cf. Spires v. MetLife Grp., Inc., No. 18 Civ. 4464, 2019 WL 4464393, at *11 (S.D.N.Y. Sept. 18, 2019) (burden met where plaintiff identified specific comparator by name, role, and duties in pay discrimination claim).

**B. NYCHRL Pregnancy Discrimination Claim**

Plaintiff's discrimination claim under the NYCHRL is subject to the same McDonnell Douglas analysis as his claim under Title VII. See Spiegel, 604 F.3d at 80. Under the NYCHRL, too, familial

status is not a protected class. See N.Y.C. Admin. Code § 8-107(22) (2018) (protecting "the needs of an employee for the employee's pregnancy, childbirth, or related medical condition . . .") (emphasis added). Because plaintiff's Title VII claim fails, it follows that plaintiff's discrimination claim under the NYCHRL also must fail.

Further, plaintiff did not oppose defendant's motion to dismiss his NYCHRL claim, which would permit the Court to dismiss the claim notwithstanding the merits. Lobban v. Cromwell Towers Apartments, LP, 345 F. Supp. 3d 334, 343 (S.D.N.Y. 2018) ("A federal court may deem a claim abandoned when a party moves to dismiss it and the opposing party fails to address the argument in any way.").

**C. FMLA Claim**

To succeed on a claim of FMLA interference, a plaintiff must establish that the defendant denied or otherwise interfered with a benefit to which he was entitled under the FMLA. See 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise [ ] any right provided under this subchapter."); see also Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004)(describing FMLA interference claims as "question[ing] . . . whether the employer in some manner impeded the employee's exercise of his or

10

her right"). Plaintiff's allegation that he took his paternity leave without incident belies his FMLA claim. Compl. ¶ 43. Accordingly, plaintiff's FMLA claim is dismissed for failure to state a claim.

The Court also notes that plaintiff fails to make any substantive arguments opposing defendant's motion to dismiss his FMLA claim, which alone would permit the Court to dismiss the claim. Lobban, 345 F. Supp. 3d at 343. Moreover, plaintiff does not bring a claim for retaliation pursuant to the FMLA. But if he did, this too would have failed, because plaintiff has not alleged that his termination arose in any way from his paternity leave.

**D. State Law Claims**

Plaintiff also brings a discrimination claim under the NYSHRL, as well as state law tort claims for intentional infliction of emotional distress and negligent supervision. Because the Court has dismissed plaintiff's federal claims pursuant to Title VII and the FMLA, it is in the Court's discretion whether to retain the remaining state law claims under supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). Pursuant to 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim" where "the district court has dismissed all claims over which it has original jurisdiction." See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("in the usual case

11

in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."). Here, we decline to exercise supplemental jurisdiction over plaintiff's remaining claims brought under state law and therefore dismiss the Complaint in its entirety.[4]

The Clerk of Court is respectfully directed to terminate the motions pending at ECF Nos. 19 and 28.

**SO ORDERED.**

Dated:   New York, New York
         October 16, 2020

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[4] The Court acknowledges that defendant requested oral argument. However, given that our decision is based on clear legal doctrine, the Court decided that oral argument would not be productive.